BRUCE CHARLES FRAZIER, PETITIONER *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT

Docket No. 17242-84.        Filed July 7, 1988.

Bruce Charles Frazier, pro se.
*Gilbert Gembacz,* for the respondent.

1

OPINION

GERBER, *Judge:* Respondent, by means of a March 6, 1984, notice of deficiency, determined deficiencies in petitioner's 1966 through 1969 taxable years, as follows:

| Year | Deficiency | Additions to tax | |
|------|-----------|------------------|-----------|
| | | Sec. 6653(b) [1] | Sec. 6654 |
| 1966 | $878.63 | $439.32 | $24.54 |
| 1967 | 1,592.89 | 796.45 | 50.89 |
| 1968 | 40,728.94 | 20,364.47 | 1,300.20 |
| 1969 | 32,912.06 | 16,456.03 | 1,050.65 |

We have under consideration respondent's motion for summary judgment, filed March 30, 1987, and respondent's motion to dismiss for failure to properly prosecute, filed April 4, 1988. The parties have filed various documents[2] stating their positions and several hearings have been conducted in which we received documentary and testimonial evidence.[3] The following issues remain for our consideration: (1) Whether sanctions placed upon petitioner for failure to comply with our orders have unconstitutionally restricted petitioner's right to due process; (2) whether respondent has satisfied his burden of proving that petitioner's failure to file returns and report income was fraudulent within the meaning of section 6653(b); (3) whether the "exclusionary rule" should be employed with respect to respondent's use of evidence which was determined (by a U.S. District Court) to be illegally seized; and (4) whether

---

[1] All section references, unless otherwise indicated, are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue. All Rule references are to this Court's Rules of Practice and Procedure.

[2] This case has been the subject of numerous orders concerning petitioner's failure to file a proper petition, constitutional questions raised by petitioner, and other related matters. In this connection, following a series of hearings, the last of which was held on May 28, 1987, the parties were ordered to submit seriatim briefs, with petitioner's opening brief due Sept. 16, 1987. The time for petitioner's opening brief was extended to Jan. 15, 1988, by the Court's order dated Oct. 21, 1987. To date, no brief has been filed by or on behalf of petitioner, and respondent has moved for dismissal for lack of petitioner's prosecution of this matter. Although petitioner has been remiss in not supplying a brief, he has stated his various positions both orally and in documents filed in connection with the motions and other matters under consideration. Accordingly, we decline to dismiss for failure of prosecution.

[3] Although hearings were held with the receipt of testimony and documentary evidence, we are treating the various documents filed by petitioner to be a cross-motion for summary judgment on the grounds that the notice of deficiency is invalid and that the case should be dismissed. All of the factual matters stated herein are assumed true for purposes of these motions for summary judgment. Resolution of petitioner's motion for summary judgment would be dispositive of this case. If petitioner's position is incorrect, then respondent's motion for summary judgment may be dispositive of this case.

damages should be awarded to the United States under section 6673.

On June 5, 1984, petitioner, in response to respondent's March 6, 1984, notice of deficiency, attempted to file a petition. Petitioner's legal residence at that time was Pasadena, California. The document filed by petitioner was determined to be "imperfect" in that no filing fee was submitted with the petition. Petitioner's imperfect petition contained the request that the $60 filing fee be waived, but no reason was advanced in support of petitioner's request. By a June 13, 1984, order, petitioner was directed to file a proper petition and pay the filing fee. On August 16, 1984, petitioner filed a document he denominated "AMENDED PETITION and REQUEST TO WAIVE FEE" in which he set forth the following contention in support of his request for waiver of the filing fee:

Petitioner hereby exercises his First Amendment, constitutionally guaranteed right to petition the judicial branch of government for redress of grievance, and petitioner contends that the free exercise of said right cannot be denied or burdened or conditioned because of any filing fee, or other fee or charge.

Petitioner did not claim to be in forma pauperis.

The Court ordered petitioner to pay the filing fee in a second order, dated August 21, 1984. Upon petitioner's continued failure to pay the filing fee, an October 4, 1984, order was issued in which petitioner was directed again to pay the filing fee and warned that failure to do so would result in the dismissal of this case with entry of decision against him as to all issues upon which he bears the burden of proof.[4] Finally, by a November 9, 1984, order, this case was dismissed as to all issues upon which petitioner bears the burden of proof due to his failure to comply with the Court's orders. The November 9, 1984, order, also directed the respondent to file, within 60 days, a pleading (answer) regarding those issues upon which he bears the burden of proof. Respondent's answer was timely served and filed. The answer made factual allegations in support of the determination that petitioner's failure to file and report

---

[4]Petitioners generally bear the burden of proof with respect to the tax liability determined by respondent. Respondent bears the burden of proof with respect to the addition to tax under sec. 6653(b).

income was fraudulent with intent to evade tax within the meaning of section 6653(b).

Thereafter, respondent served a request for admissions upon petitioner. Petitioner failed to respond to this request as required by Rule 90(c). The following facts are some of which are deemed admitted due to petitioner's failure to respond under this Court's Rules:

a. Petitioner failed to file Federal income tax returns for any of the taxable years 1966, 1967, 1968, or 1969.

b. During each of the taxable years 1966, 1967, 1968, and 1969, petitioner's books and records were maintained on the cash method of accounting.

c. Petitioner, as one-eighth (1/8) remainderman of a trust, created in 1909, received dividend income and interest income in the following amounts:

| Year | Dividend income | Interest income |
|------|-----------------|-----------------|
| 1966 | $6,158.00 | $5.71 |
| 1967 | 9,460.99 | 29.67 |
| 1968 | 16,289.94 | 40.52 |
| 1969 | 15,429.80 | 27.99 |

d. None of the dividend income or interest income referred to in subparagraph c, above, was reported by petitioner on a Federal income tax return for 1966, 1967, 1968, or 1969.

e. Forms 1099, showing dividend income received, were mailed to petitioner for the taxable years 1966, 1967, 1968, and 1969.

f. Yearend and monthly brokerage statements containing the total dividend and interest income credited to petitioner's account during the years 1968 and 1969 were mailed to petitioner by Merrill, Lynch, Pierce, Fenner & Smith.

g. During the taxable year 1968, petitioner realized long-term capital gain from the sale of stock in the amount of $136,366.03.

h. After taking into account the 50-percent capital gains deduction provided by section 1202 for the taxable year 1968, petitioner was required to report $68,183.01 as income on the gain referred to in subparagraph g.

i. During the taxable year 1969, petitioner realized long-term capital gain from the sale of stock in the amount of $105,828.90.

j. After taking into account the 50-percent capital gains deduction provided by section 1202 for the taxable year 1969, petitioner was required to report $52,914.45 as income on the gain referred to in subparagraph i.

k. None of the net long-term capital gain income referred to in subparagraphs g through j, above, was reported by petitioner on a Federal income tax return for the taxable years 1968 or 1969.

l. Petitioner falsely informed banks and brokerage firms that he had no social security number.

m. During the taxable years 1966 through 1969, petitioner maintained two social security numbers.

n. During the course of the examination of petitioner's income tax liabilities, respondent's agents requested that petitioner submit for inspection and examination all books and records maintained by him with respect to the taxable years 1966, 1967, 1968, and 1969.

o. After respondent's agent requested that petitioner submit books and records relating to the taxable years 1966, 1967, 1968, and 1969, petitioner indicated that he did not intend to pay tax or to cooperate with IRS agents in any way.

p. Throughout the relevant period, petitioner was fully aware of the tax consequences of his security transactions and his duty to file Federal income tax returns.

q. The above-described acts and omissions were done willfully and knowingly with the intent to evade Federal income tax and defeat the payment thereof.

r. Petitioner fraudulently and with intent to evade tax failed to report dividend income, interest income, and capital gain income received by him during the taxable years 1966, 1967, 1968, and 1969.

s. The unreported income along with the resulting unreported tax required to be shown on Federal income tax returns for the taxable years 1966, 1967, 1968, and 1969 *is* due to fraud.

Petitioner was charged in a four-count indictment with violation of section 7203, willful failure to file income tax returns, and on October 10, 1973, petitioner (defendant in the District Court proceeding) moved to suppress, as evidence, all property seized from his apartment on March

6

21, 1969, by Pasadena police officers. In its findings of fact and conclusions of law, entered March 12, 1974, the U.S. District Court, Central District of California (*United States v. Frazier,* No. 12243-WJF-CD) in support of the granting of petitioner's motion, in pertinent part, found as follows:

a. Based upon petitioner's listing of a post office box as his address on his motor vehicle registration,[5] Inspector E.E. Kunkle (Kunkle) of the California Department of Motor Vehicles began an investigation to determine whether petitioner had violated the California Motor Vehicle Code. Kunkle, through contact with two attorneys who had previously been retained by petitioner, learned that petitioner had inherited a large amount of stock, primarily in the Singer Sewing Machine Co. Kunkle confirmed this information with a bank.

b. In an attempt to obtain petitioner's social security number, Kunkle contacted the Internal Revenue Service (respondent) and the California Franchise Tax Board. Each agency advised that they had no record of petitioner filing returns of income. Kunkle, during these contacts, advised employees of the agencies that petitioner had inherited valuable stock. Based upon Kunkle's allegations that petitioner operated a motor vehicle without a driver's license, a warrant for petitioner's arrest was issued by the Municipal Court at Pasadena, California, for misdemeanor violations.[6]

c. Based upon the above warrant, two police officers, who had been informed of petitioner's inheritance and failure to file tax returns, were instructed to confiscate records of petitioner's income, as well as vehicle registration slips and driver's license. Late on the night of March 21, 1969, the two police officers in plain clothes confronted petitioner at his home. After announcing their purpose, uniformed police officers were summoned. One of the uniformed officers forced open the outside door of petitioner's apartment. With guns drawn, the police officers handcuffed petitioner and compelled him to sit in a chair in his apartment. Without petitioner's consent, the officer searched petitioner's apart-

---

[5]The investigation was apparently directed at determining whether petitioner was operating a motor vehicle without a driver's license in addition to the apparent violation prohibiting the use of a post office box on a vehicle registration, where a residence or business address is available.

[6]The violations were for a false statement and driving without a license.

ment. During the course of their search, the officers broke into a padlocked closet and seized a briefcase containing personal papers (including Singer Sewing Machine Co. stock certificates) and a shoe box containing vehicle registration slips. One officer testified that the stock certificates were seized "to protect them for [petitioner's] benefit while * * * in custody." Petitioner was released on bail a few hours later, but the stock certificates were not then returned to him.

d. Kunkle took the stock certificates to the Internal Revenue Service, where copies were made and retained by respondent's agents. As a result of Kunkle's display of the stock certificates to respondent, a preliminary investigation was begun on April 14, 1969, which resulted in the section 7203 indictment. The seized stock certificates were not returned to petitioner by State officials until the Pasadena Municipal Court, on April 24, 1969, held that the search of petitioner's apartment was unlawful and ordered the return of all unlawfully seized property.

e. Based upon the above record, as summarized, the U.S. District Court suppressed all evidence found to be unlawfully seized from petitioner. The Government appealed to the U.S. Court of Appeals for the Ninth Circuit, which affirmed the District Court, in an unpublished opinion.

Without the unlawfully seized documents, respondent would not have sufficient information to make the determination involved herein.

*Petitioner's Failure To Pay Filing Fee*

Rule 20(b) requires a $60 fee to be paid at the time of filing a petition. See also section 7451 authorizing the Court to impose a fee. The fee may be waived "if the petitioner establishes to the satisfaction of the Court by an affidavit containing specific financial information that he is unable to make such payment." Rule 20(b). Petitioner has not complied with this Court's Rules or orders requiring his payment of the fee or the submission of a statement of his lack of financial ability to pay the fee. Instead, petitioner wishes the fee waived because it, in his opinion, unconstitutionally restricts his right to litigate in this Court. Petitioner specifically points out a further distinction in this

case insofar as his interest in litigating is concerned, it is limited to showing that a violation of constitutional rights (the unlawful search and seizure) was the basis for respondent's notice of deficiency. Accordingly, petitioner seems to argue that the filing fee would be proper in all cases, except those where the question of constitutional rights or privileges are in issue.

As a result of petitioner's intentional failure to pay the fee or to provide information in accord with the Court's orders and Rules, this case was "dismissed" as it relates to issues upon which petitioner bears the burden of proof.[7] Under the Court's Rules, petitioner would have been afforded the opportunity to proceed in forma pauperis if he was willing or able to supply an affidavit, or possibly other evidence, of his inability to financially proceed.[8]

There is long-standing precedent for dismissal for failure to pay a filing fee. *Bioff v. Commissioner,* 47 B.T.A. 942 (1942). In that case, as in the present one, the taxpayer was allowed to file a petition (which we considered "imperfect") and given an opportunity to pay the filing fee. After failing to do so, the taxpayer's case in *Bioff v. Commissioner, supra,* was dismissed and a decision entered against him for the amount of the tax determined by respondent.[9] In the setting of this case, we are unable to enter a decision against petitioner because of the need to consider his

---

[7]Petitioner would normally bear the burden of going forward and the burden of proof to show that respondent's determination is in error, unless petitioner can show that respondent's notice of deficiency should not be afforded its statutory presumption of being correct in which event the burden of going forward is shifted to respondent.

[8]It is essential to reach this question because petitioner's "motion for summary judgment" on procedural grounds is to be denied, and respondent's motion for summary judgment, must be considered.

[9]Also addressed in *Bioff v. Commissioner,* 47 B.T.A. 942 (1942), was the question of whether respondent would be required to prove an addition to tax for fraud in these circumstances. In that case, a majority of the Board of Tax Appeals held that: "Since there is no 'proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax,' section 1112 does not cause any burden of proof upon the Commissioner." *Bioff v. Commissioner, supra* at 944. The Board of Tax Appeals' holding was based on the principle that the taxpayer had not taken the step (payment of filing fee) necessary to institute a proper proceeding raising any issues, apparently including issues where respondent bore the burden of proof. We do not address the addition to tax for fraud issue in the context of the dismissal as sanction for failing to comply with our Rules and orders, because the holding in *Miller-Pocahontas Coal Co. v. Commissioner,* 21 B.T.A. 1360 (1931), in the context discussed in *Doncaster v. Commissioner,* 77 T.C. 334, 336-338 (1981), and *Rechtzigel v. Commissioner,* 79 T.C. 132, 139-143 (1982), affd. 703 F.2d 1063 (8th Cir. 1983), would require respondent to advance some showing that the taxpayer's failure to report was fraudulent with intent to evade tax.

contentions concerning the validity of the notice of deficiency, and the addition to tax under section 6653(b) upon which respondent bears the burden of proof.

The essence of this issue lies in petitioner's failure or refusal to comply with this Court's orders and Rules. The facts of this case are dissimilar to circumstances where a taxpayer initially fails to pay the filing fee at the time of filing a petition. See *Weaver v. Blair, Commissioner of Internal Revenue*, 19 F.2d 16 (3d Cir. 1927), and *Reliance Mfg. Co. v. Blair, Commissioner of Internal Revenue*, 19 F.2d 789 (7th Cir. 1927). Unlike the safeguards afforded defendants in a criminal proceeding, civil proceedings, especially where the individual involved is the "prosecuting" party, do not require the waiver of costs and fees. Although it has been held that fees and costs in civil cases should be waived for indigence in certain circumstances (*Boddie v. Connecticut*, 401 U.S. 371 (1971)), and that it is not capricious or arbitrary not to waive them in other circumstances (*Ortwein v. Schwab*, 410 U.S. 656, 662 (1973)); there is no authority for petitioner's contention that the requirement of a filing fee is inherently unconstitutional. This is especially true here where petitioner declined the opportunity to proceed in forma pauperis, although said opportunity was offered several times. Under these circumstances, this Court's orders requiring payment of the filing fee and sanctioning petitioner for his failure to do so, are appropriate and do not unreasonably deny petitioner due process and/or a full and fair opportunity to come forward and present his position.

### Validity of the Notice of Deficiency— ### Illegally Seized Evidence

"As a general rule, this Court will not look behind a deficiency notice to examine the evidence used or the propriety of respondent's motives or of the administrative policy or procedure involved in making his determinations." *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327 (1974). Where, however, there is substantial evidence of unconstitutional conduct by respondent in connection with the deficiency determined, we have, as an exception and on occasion, "looked behind the notice of deficiency." *Riland v.*

*Commissioner,* 79 T.C. 185, 207 (1982); *Greenberg's Express, Inc. v. Commissioner, supra* at 328; *Suarez v. Commissioner,* 58 T.C. 792, 814 (1972), overruled in part.[10]

In this case, it is undisputed that documents and information were unlawfully seized from petitioner by municipal police. Further, respondent has admitted that the notice of deficiency in this case was based wholly upon the unlawfully seized evidence. Moreover, the U.S. District Court has found that the seizure was unlawful and suppressed the use of the evidence for purposes of respondent's prosecution of petitioner for failure to file a return under section 7203. In addition, the District Court's holding was affirmed by the Circuit Court of Appeals for the Ninth Circuit in response to the Government's appeal. Accordingly, we must "look behind" the notice of deficiency in this case to consider its validity.

Although the District Court's suppression of unlawfully seized evidence was a correct expression of the law at the time (March 12, 1974) (and may still be correct in a criminal case setting), the Supreme Court subsequently held that the "exclusionary rule should not be extended to forbid the use in the civil proceeding of one sovereign of evidence seized by a criminal law enforcement agent of another sovereign." *United States v. Janis,* 428 U.S. 433, 460 (1976). Petitioner relies upon *Suarez v. Commissioner, supra,* which we decided in a pre-*Janis* setting and have since overruled in *Guzzetta v. Commissioner,* 78 T.C. 173, 176-184 (1982).

Although it appears that the State and municipal authorities' involvement in the warrant for petitioner's arrest was independent from respondent, petitioner contends that respondent's agents were involved. The only indications in support of petitioner's contention are the request by Kunkle that the police officers search for income-related matters, in addition to the vehicle registration documents and Kunkle's contact with Internal Revenue Service to obtain the social security number prior to issuance of the warrant. Although these contentions may raise suspicion about whether respondent was involved with the search and seizure, peti-

---

[10]If in "looking behind" a deficiency notice we find that respondent did not have sufficient information to make a determination or that the determination was based upon illegally seized evidence, the notice would not be afforded the usual presumption of correctness. That determination would shift the burden of going forward to respondent.

tioner has not provided any direct or circumstantial evidence or information which would support a finding that respondent was involved in the search and seizure of petitioner's apartment during 1969.

Respondent offered, as a witness, a special agent who had been assigned the investigation of petitioner's failure to file and/or report income for the taxable years in question. The special agent was not assigned to the case until April 1969, a date which was subsequent to the issuance and execution of the warrant in question. The initial contact by Kunkle seeking information from Internal Revenue Service (and at which time he mentioned the potential sources of income) does not show that respondent was involved in the issuance or execution of the warrant. In this setting, the Internal Revenue Service merely advised Kunkle that their records reflected that no returns were filed for the period in question. It was not until Kunkle had turned the stock certificates over to respondent for photocopying that respondent, through his agents, began an active role regarding petitioner. Accordingly, *United States v. Janis, supra*, is dispositive of petitioner's argument that the evidence unlawfully seized by local police should be suppressed and that respondent should not be permitted to base the determination in the notice of deficiency upon said evidence.[11]

Accordingly, we hold that the notice of deficiency in this case is valid and that the notice is afforded a presumption of correctness. Since the income determination of respondent is presumed correct, petitioner retains the burden of going forward as well as the burden of showing that respondent's determination was in error. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a). Due to our November 9, 1984, order dismissing all issues upon which petitioner bears the burden of proof, respondent's determination of unreported income is deemed correct.

*Addition to Tax for Fraud—Section 6653(b)*

On March 30, 1987, respondent filed a motion for summary judgment, under Rule 121, as to the addition to

---

[11]Had we found that respondent was involved in the search and seizure, we would have had to analyze whether the "good-faith exception to the exclusionary rule" should be applied in this case. *United States v. Leon*, 468 U.S. 897 (1984).

tax for fraud. A motion for summary judgment may be granted when the moving party shows that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. Rule 121(b); *Shiosaki v. Commissioner,* 61 T.C. 861, 863 (1974). Respondent has prevailed with respect to the underlying income tax deficiencies pursuant to the November 9, 1984, order dismissing all issues upon which petitioner bore the burden of proof. However, the burden of proof with respect to the addition to tax for fraud is on respondent and he must carry that proof by clear and convincing evidence. Sec. 7454(a); Rule 142(b); *Levinson v. United States,* 496 F.2d 651, 654-655 (3d Cir. 1974); *Miller v. Commissioner,* 51 T.C. 915, 918 (1969).

To establish fraud, respondent must show that the taxpayer intended to evade taxes which he knew or believed that he owed, by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. *Webb v. Commissioner,* 394 F.2d 366, 377-378 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; *Powell v. Granquist,* 252 F.2d 56, 60 (9th Cir. 1958); *Acker v. Commissioner,* 26 T.C. 107, 111-112 (1956). The presence or absence of fraud is a factual question to be determined by an examination of the entire record. *Gajewski v. Commissioner,* 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. *Beaver v. Commissioner,* 55 T.C. 85, 92 (1970). However, fraud may be proved by circumstantial evidence since direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct can often be relied on to establish the requisite fraudulent intent. *Stone v. Commissioner,* 56 T.C. 213, 223-224 (1971); *Otsuki v. Commissioner,* 53 T.C. 96, 105-106 (1969).

Respondent relies upon petitioner's failure to reply to the request for admissions and the resulting deemed admissions to carry his burden of proof. Whether this meets the standard of clear and convincing evidence must be determined from the facts and circumstances of this case. In appropriate circumstances, deemed admissions may be accepted as evidence sufficient to carry respondent's burden of proof with respect to fraud. *Cassidy v. Commissioner,* 814 F.2d 477, 481-482 (7th Cir. 1987), affg T.C. Memo.

1986-133, held this directly. See *Doncaster v. Commissioner*, 77 T.C. 334 (1981). Through the deemed admitted facts, respondent has established that over a period of several years petitioner has engaged in a consistent pattern of concealing substantial amounts of income. This is strong evidence of an intent to evade tax. *Merritt v. Commissioner*, 301 F.2d 484, 487 (5th Cir. 1962); *Brooks v. Commissioner*, 82 T.C. 413, 431 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985). For the taxable years 1966 through 1969, petitioner received substantial sums of taxable income. Petitioner was aware of his obligation to report such income and of the fact that his income information would be documented and forwarded to the Internal Revenue Service by the payer of these sums. Petitioner, in his effort to circumvent the tax system, refused to release his social security number to any of the third-party payers and refused to cooperate with respondent's agents during the examination of his books and records. Also, petitioner has stated that he did not intend to pay any tax.

In his petition, petitioner did not assign error to the determination of fraud in the deficiency notice; rather, he set forth general tax-protestor-type statements. Based upon the deemed admissions, we hold that respondent has met his burden of proof with respect to petitioner's fraudulent intent by clear and convincing evidence for each of the taxable years 1966, 1967, 1968, and 1969.

### *Damages—Section 6673*

Respondent, by oral motion at the hearing, moved that damages be awarded to the United States and against petitioner. Section 6673 provides for damages "Whenever it appears * * * that proceedings * * * have been instituted or maintained * * * primarily for delay, that the taxpayer's position * * * is frivolous or groundless." Petitioner herein has utilized what has commonly become known as protestor rhetoric interspersed among his arguments concerning the filing fee and suppression of illegally seized evidence. Even though some well-worn "tax protestor" language is interspersed in petitioner's arguments, the issues presented in this case are justiciable. Accordingly, and exercising our discretion, we decline to award damages in this proceeding.

14

To reflect the foregoing,

*Decision will be entered for the respondent.*