GEORGE W. DAHLBERG, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dahlberg v. Commissioner
Docket No. 23641-87
United States Tax Court
T.C. Memo 1989-551; 1989 Tax Ct. Memo LEXIS 549; 58 T.C.M. (CCH) 347; T.C.M. (RIA) 89551; October 10, 1989
George W. Dahlberg, pro se. Rebecca A. Dance, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: This case was assigned to Special Trial Judge D. Irvin Couvillion pursuant to the provisions of section 7443A(b)(4) of the Internal Revenue Code of 1986 and Rule 180 et seq. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE COUVILLION, Special Trial Judge: Respondent determined the following deficiencies in, and additions to, petitioner's Federal income taxes: Additions to Tax
Section
Section
Section
Section
Year
Deficiency
6653(b)(1)
6653(b)(2)
6654
6661
1982
$ 24,664.00
$ 12,332.00
*
$ 1,511.00
$ 6,166.00
1983
$ 19,684.00
$  9,842.00
*
$   497.00
$ 4,921.00
1984
$ 18,003.00
$  9,002.00
*
$   249.00
$ 4,501.00
*552 Pursuant to a motion filed by respondent for a more definite statement, petitioner was ordered to file an amended petition to allege specifically the errors claimed to have been committed by respondent and the facts in support thereof. After petitioner failed to comply, respondent moved to dismiss the case and requested damages under section 6673. Respondent's motion was granted in part. The case was dismissed, as to each year, for the deficiencies in Federal income tax and the additions to tax under sections 6654 and 6661. The remaining issues for decision are: (1) The additions to tax for fraud under section 6653(b); and (2) whether damages should be awarded to the United States under section 6673. FINDINGS OF FACT Petitioner was a resident of Kingston, Tennessee, at the time he filed his petition. Petitioner was an engineer by trade. For each of the years 1979, 1980, and 1981 (years prior to the years at issue), petitioner filed Federal income tax returns with respondent's service center at Memphis, Tennessee. *553 Petitioner claimed two personal exemptions and two dependency exemptions on the returns for these years. Petitioner claimed a total of four withholding allowances on each Form W-4, Employee Withholding Allowance Certificate, which he filed with his employers for those years. For the years 1982, 1983, and 1984 (which are at issue in this case), petitioner failed to file Federal income tax returns. For the years 1982, 1983, and 1984, petitioner earned gross income of $ 62,362, $ 56,108, and $ 55,007, respectively. He was, therefore, required to file Federal income tax returns for these years pursuant to section 6012(a)(1)(A). On or about April 30, 1982, petitioner submitted a Form W-4 to CDI Corporation (CDI), his employer, wherein he claimed, under penalties of perjury, exemption from Federal income taxes. Petitioner worked for CDI from August 27, 1979, through May 28, 1982. He was rehired by CDI on February 14, 1983, and was terminated on June 3, 1983. On or about April 22, 1982, petitioner formed a corporation, Dahlberg Associates, Inc. (Associates), under the laws of the State of Tennessee. Associates entered into a contract with Central Technical Services, Inc. (Central), *554 whereby petitioner would perform contract engineering services to a third company, Carolina Power and Light (Carolina). Petitioner did not file a Form W-4 with either Associates, Central, or Carolina. Central issued a Form 1099-MISC to Associates for each of the years 1982 and 1983, reporting nonemployee compensation of $ 33,948 and $ 6,888, respectively, attributable solely to petitioner's services rendered to Carolina. Petitioner received additional nonemployee compensation in the amount of $ 14,558 in 1983 from two other corporations for which he performed contract engineering services. On or about February 2, 1984, petitioner submitted a Form W-4 to American Technical Associates (American), his employer, wherein he claimed, under penalties of perjury, six withholding allowances. He earned $ 54,683 in wages from American during 1984. OPINION At trial, petitioner appeared but declined to make an opening statement, declined to cross-examine respondent's witnesses, declined to testify, and presented no case in his defense. Prior to trial, petitioner refused to meet with counsel for respondent to stipulate to those factual matters which were reasonably not in dispute as required *555 by Rule 91. Each time the Court requested petitioner's participation at trial, he declined on the basis that the Court lacked jurisdiction. Petitioner's recalcitrant objections to this Court's jurisdiction were based on numerous insipid contentions, including the following: There was no tax imposed by subtitle A of the Code; there were no words in the Constitution authorizing or empowering Congress to enact any of the provisions, sections, or parts of subtitle A of the Code; and petitioner was not a taxpayer. These were essentially the allegations of his petition, which he was ordered, but failed, to amend. The Court rejects each and every contention raised by petitioner on two grounds. First, the Court previously disposed of petitioner's protester arguments on the deficiencies in tax and the additions to tax under sections 6654 and 6661. These issues are no longer before the Court. Second, the Court finds that each and every objection raised by petitioner was frivolous and unworthy of scholarly discussion. McCoy v. Commissioner, 76 T.C. 1027, 1029 (1981), affd. 696 F.2d 1234 (9th Cir. 1983). Accordingly, the Court turns to the determination *556 of whether respondent carried the burden of proving fraud by clear and convincing evidence. Rule 142(b). The addition to tax for fraud under section 6653(b) has two components. The addition under section 6653(b)(1) is 50 percent of the entire underpayment, if any portion of the underpayment is attributable to fraud. The addition under section 6653(b)(2) is 50 percent of the interest payable under section 6601 with respect to that portion of the underpayment attributable to fraud. The elements of liability under section 6653(b) are: (1) An underpayment of tax, and (2) a finding that some part of the underpayment was due to fraud. An underpayment of tax for each year has been clearly proven, and the issue is solely whether such underpayments or any portion thereof for each year were due to fraud. The existence of fraud is a question of fact to be determined from an examination of the entire record. Kotmair v. Commissioner, 86 T.C. 1253, 1259 (1986). Fraud is not to be presumed, *557 Beaver v. Commissioner, 55 T.C. 85, 92 (1970), and courts should not sustain findings of fraud upon circumstantial evidence which creates only a suspicion of fraud. Carter v. Campbell, 264 F.2d 930, 935 (5th Cir. 1959). An underpayment of tax is due to fraud only when the taxpayer intentionally violates a known legal duty, with a specific purpose to evade a tax known or believed to be owing. Wright v. Commissioner, 84 T.C. 636, 639-643 (1985). The mere failure to file a return is insufficient to establish fraud where the taxpayer is open and forthright about such conduct and the reasons therefor, and where there is no evidence of falsification, concealment, deception, or other facts which would support a finding of fraudulent intent. Kotmair v. Commissioner, supra at 1260. The focal point of inquiry is, therefore, whether there is clear and convincing proof of a tax avoidance purpose. Because direct proof of tax avoidance motivation is rarely available, fraud may be proven by circumstantial evidence. Stone v. Commissioner, 56 T.C. 213, 224 (1971). Evidence that *558 the taxpayer falsified documents, concealed information, misled respondent, or otherwise attempted to prevent the collection of taxes is highly probative of a tax avoidance motivation. Spies v. United States, 317 U.S. 492, 499 (1943); Stone v. Commissioner, supra at 224. Where fraud is determined for more than one taxable year, respondent must show that some part of the underpayment for each year was due to fraud. Professional Services v. Commissioner, 79 T.C. 888, 930 (1982); Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). Based on these principles, in the circumstances of this case, the Court must determine whether petitioner's conduct clearly and convincingly evidenced fraud for each of the years 1982, 1983, and 1984. The Court finds that petitioner knowingly falsified Form W-4 submitted to CDI in 1982. Petitioner had paid taxes in previous years and was an educated individual who knew that he, like all other citizens, was required to pay Federal income tax. When petitioner submitted his 1982 Form W-4 claiming exemption from taxes, he knew that he was not entitled to the exemption and *559 intended that the effect of his action would be to prevent withholding of Federal income tax from his wages. Petitioner's intentional falsification of Form W-4 in 1982 and his failure to file a return for 1982 constitute clear and convincing evidence of fraud. See Hebrank v. Commissioner, 81 T.C. 640 (1983); Habersham-Bey v. Commissioner, 78 T.C. 304 (1982). Accordingly, respondent's determination is sustained with respect to the year 1982. Respondent's determination of fraud as to the year 1983 is based on the contention that petitioner's interposition of corporations between himself and Carolina was a sham arrangement undertaken to avoid withholding of Federal income tax from petitioner's wages. In this regard, respondent alleged that petitioner was an employee of Carolina, subject to withholding on amounts paid by Carolina to Central, and that petitioner was the true earner of the compensation paid by Carolina to Central. Respondent's contention that this arrangement was a sham and that petitioner intended to avoid taxes through these corporations is severely deficient. *560 In cases involving the application of both the true earner test of Lucas v. Earl, 281 U.S. 111 (1930), and the separate corporate existence doctrine of Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943), it is insufficient merely to identify "the one actually turning the spade or dribbling the ball." Johnson v. Commissioner, 78 T.C. 882, 890 (1982), affd. without published opinion 734 F.2d 20 (9th Cir. 1984). In such cases, the Court has developed a two-prong test. First, the service-performer employee must be just that -- an employee of the corporation whom the corporation has the right to direct or control in some meaningful sense. Second, there must exist between the corporation and the person or entity using the services a contract or similar indicium recognizing the corporation's controlling position. Haag v. Commissioner, 88 T.C. 604, 611 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988); Johnson v. Commissioner, supra at 891. Respondent failed to establish that petitioner was an employee of Carolina, especially *561 in view of petitioner's additional nonemployee compensation received in 1983, which respondent did not assert to be employee compensation. The efficacy of personal service corporations, such as Associates, is well established as a valid modus operandi for professionals where business considerations dictate the use of a separate entity. Because respondent offered no evidence whatsoever in support of the sham transaction theory, the Court finds that this arrangement was not evidence of any tax avoidance purpose. Notwithstanding, the Court finds that petitioner committed fraud in 1983. On February 14, 1983, petitioner was rehired by CDI as an employee. As an employee, petitioner was required to file a new Form W-4 with CDI replacing the previous Form W-4, on which he claimed exempt status, no later than February 16, 1983, under section 31.3402(f)(4)-2(c)(1), Employment Tax Regs.Section 31.3402(f)(4)-2(c)(1), Employment Tax Regs., provides that a withholding exemption certificate on which exempt status is claimed shall be effective until February 15 of the following calendar year. Petitioner failed to file a new Form W-4 in 1983 and resumed work *562 with CDI under a false Form W-4. The Court finds that petitioner knew he had filed a false Form W-4 in 1982 and, upon reemployment with CDI, intended to resume his exempt status fraudulently claimed under the 1982 Form W-4. Additionally, petitioner actually worked for two days in 1983, February 14 and 15, under the false Form W-4 which had not yet expired. Accordingly, the Court finds that a portion of petitioner's underpayment in 1983 was due to fraud. Combined with petitioner's failure to file, respondent's determination of fraud is sustained with respect to the year 1983. As to the year 1984, the Court finds that respondent did not establish that petitioner knowingly filed a false Form W-4. Petitioner claimed six withholding allowances on the Form W-4 filed with American in 1984. Petitioner was married and had two children in 1984, entitling him to at least four withholding allowances under section 31.3402(f)(1)-1(b), (c), and (d), Employment Tax Regs. Numerous additional allowances are available under section 31.3402(m)-1, Employment Tax Regs. These include exemptions for estimated itemized deductions, tax credits, employee business expenses, *563 the two-earner married couple deduction, and net losses from Schedules C, D, E, and F. Respondent presented no evidence that petitioner was not entitled or knew that he was not entitled to these additional allowances. Significantly, petitioner did not claim exemption from taxes on his 1984 Form W-4, as he had claimed for 1982. Without additional evidence, even considering petitioner's failure to file a return for 1984, the Court, on this record, declines to find fraud for 1984. Respondent's determination of fraud for the year 1984 is, therefore, erroneous. With respect to the years 1982 and 1983, respondent has established that a portion of the underpayments in tax for each of these years was due to fraud; consequently, the determination for each of these years under section 6653(b)(1) is sustained. Section 6653(b)(2), however, provides that the addition to tax due thereunder applies only to that portion of the underpayment attributable to fraud. Respondent established that the underpayments in tax attributable to the wages paid to petitioner by CDI during 1982 and 1983 were attributable *564 to fraud. As to these wages, therefore, the Court finds that the addition to tax under section 6653(b)(2) is applicable, and respondent's determination is sustained. However, as to all other income earned by petitioner during 1982 and 1983, the Court finds that the addition to tax under section 6653(b)(2) is not applicable. Respondent presented no evidence of fraud as to other income earned by petitioner during these years, which included dividends and interest. As discussed above, the Court finds that the underpayment attributable to the wages paid by Central during 1982 and 1983 was due to fraud. Section 6673 authorizes this Court to award damages not in excess of $ 5,000 to the United States if: (1) The Tax Court proceeding has been instituted or maintained primarily for delay; (2) petitioner's position in such proceeding is frivolous or groundless; or (3) petitioner unreasonably failed to pursue available administrative remedies. Where the addition to tax for fraud has been determined by respondent, this Court takes special care in determining whether damages should be awarded under *565 section 6673. Bartlett v. Commissioner, T.C. Memo. 1989-230; Hammers v. Commissioner, T.C. Memo. 1988-167; French v. Commissioner, T.C. Memo. 1986-109. A taxpayer, of course, has every right to contest a determination of fraud, and respondent bears the burden of proof in establishing fraud. French v. Commissioner, supra.
Where a taxpayer puts respondent to the task of proving fraud by presenting a justiciable issue, this Court has declined to award damages, even if the justiciable issue was interspersed with well-worn tax protester arguments. Frazier v. Commissioner, 91 T.C. 1, 13 (1988). However, where a taxpayer raises solely frivolous and groundless arguments in opposition to respondent's determination of deficiencies and additions to tax for fraud, this Court has often found, based on the individual facts of each case, that "petitioner's primary purpose was not to utilize this Court as a forum to litigate a genuine tax controversy but only to express his dissatisfaction with the Federal income tax system and to delay the payment of his Federal tax obligation." *566 French v. Commissioner, supra.See also Kearse v. Commissioner, T.C. Memo. 1988-249; Barr v. Commissioner, T.C. Memo. 1988-139; Cavenaugh v. Commissioner, T.C. Memo. 1987-622. The Court finds, based on the record, that petitioner's primary purpose for initiating and maintaining this proceeding was for delay. While petitioner had a valid interest in contesting the addition to tax for fraud, he took no action in pursuit of that interest. He declined to present any evidence and made no attempt to challenge respondent's presentation. Petitioner did absolutely nothing to address the merits of his case. Instead, he did everything he could to frustrate the disposition of this case. From the time he filed his petition with the Court through the call of the calendar, and even in his post-trial brief, petitioner bombarded the Court with over 200 pages of meaningless paper denigrating the valid laws of the United States, disparaging the function of respondent, and endeavoring to frustrate and obviate the process of this Court. Some of these filings consisted of meritless motions for summary judgment. *567 His consistent and continuous assertions that the Federal income tax laws were unconstitutional and invalid, and his accusations that each Judge of this Court failed to support the Constitution of the United States, were totally ludicrous. If petitioner desires political redress, he should direct his endeavors to an appropriate forum, but not to the courts. All that petitioner has done since the inception of this case has been to vent his dissatisfaction with the United States revenue system and to engage in harassing, dilatory, and obfuscating tactics to frustrate the functions and responsibilities of respondent and the process of this Court. Petitioner's repeated declarations that this Court had no jurisdiction belied any good faith he may have had in challenging respondent's determinations. Petitioner's incessantly obstructive course of conduct is convincing evidence that he did not petition this Court to challenge respondent's fraud determination. His continuous failure to comply with the orders of this Court and his total abandonment and failure to prosecute his case convinces the Court that his purpose was not to use this Court as a forum to litigate a genuine tax controversy, *568 but rather to delay payment of his tax liability as long as possible. Further, the Court finds that petitioner was well aware that his positions were frivolous and that the only advantage he sought to obtain was a delay in the payment of his liability. Petitioner's litany of tax protester arguments has been rejected time and time again. Petitioner appeared before this Court once before and presented the same arguments he raised in this case. The Court dismissed his action as frivolous and awarded damages to the United States. George W. Dahlberg, Petitioner v. Commissioner of Internal Revenue, Respondent, Docket No. 16615-87. Accordingly, respondent's motion for damages is granted, and damages of $ 5,000 are awarded to the United States. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references hereafter are to the Internal Revenue Code of 1954, as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. An amount equal to 50 percent of the interest payable under section 6601↩ on $ 17,366, $ 10,409, and $ 6,776 for the years 1982, 1983, and 1984, respectively.